**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**O. Stephen LYONS, Defendant–**
**Appellant.**

**No. 04–50157.**

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 8, 2006.*

Filed July 19, 2006.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

John Lanahan, San Diego, CA, for the defendant-appellant.

Melanie K. Pierson, Assistant U.S. Attorney, San Diego, CA, for the plaintiff-appellee United States of America.

Before: ROBERT R. BEEZER, THOMAS G. NELSON, and RONALD M. GOULD, Circuit Judges.

GOULD, Circuit Judge.

Stephen Lyons appeals his conviction and sentence, imposed by the district court upon a jury verdict finding him guilty of mail fraud, in violation of 18 U.S.C. § 1341. We have jurisdiction under 28 U.S.C. § 1291. We affirm Lyons's conviction, vacate his sentence, and remand for resentencing.

**I**

In July 2003, a federal grand jury charged Lyons with ten counts of mail fraud. The indictment alleged that Lyons sold fraudulent celebrity memorabilia bearing "counterfeit signatures of various personalities, including Arnold Schwarzenegger, Jerry Garcia, Muhammad Ali, Sara Michelle Geller [sic], Teri Hatcher, Carmen Electra, and others." The fifth count of the indictment alleged that Lyons mailed four movie posters,[1] each bearing counterfeit signatures, to an address belonging to Richard Mitchell, a cooperating defendant and government informant.

Mitchell had contacted Lyons on the government's behalf, posing as a memorabilia wholesaler who wanted to buy fraudulent memorabilia from Lyons. Mitchell and Lyons communicated primarily by telephone, and Mitchell recorded several conversations with Lyons. At trial the government introduced transcripts of these conversations into evidence. During one of the conversations, recorded on July 30, 2001, Lyons agreed to accept "a small order of movie posters" from Mitchell for

"a couple hundred bucks." Earlier in the conversation, referring to the movie posters, Mitchell told Lyons:"[T]hese, these posters I have going to a, to a guy."

At trial Mitchell testified that he sent Lyons a package on August 2, 2001, containing four unsigned movie posters, $200 in cash, and a note that read "Steve, sorry for the small order. Next time I'll make it worth your time. I only need eight signatures at $25 each." Mitchell further testified that he spoke to Lyons by telephone on August 13, 2001, and that during this conversation Lyons wanted to know whether Yul Brynner, who portrayed Pancho Villa in *Villa Rides*, was alive and, if not, when he had died. According to Mitchell's testimony, Lyons explained that he was trying to determine whether Brynner died before Sharpie magic markers were sold so Lyons could choose the type of pen with which to forge Brynner's signature on the *Villa Rides* poster. Mitchell told Lyons that "if he signed it in ball point pen, we shouldn't have any problems." Mitchell testified that he spoke to Lyons again on August 14, 2001, after Mitchell received the fraudulently-signed posters from Lyons, and that in this conversation Mitchell told Lyons that the poster bearing the forged signature of Yul Brynner had sold for $700. The jury found Lyons guilty on count five, as well as the other nine counts alleged in the indictment. After the jury returned its verdict, Lyons moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court denied the motion.

Before his sentencing hearing, Lyons filed written objections to the presentence report, in which he argued that the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348,

---

1. The posters advertised the movies: *Toy Story* (Pixar Animation Studios 1995); *Braveheart* (Paramount Pictures 1995); *Natural Born Killers* (Warner Bros. Pictures 1994), and *Villa Rides* (Paramount Pictures 1968).

147 L.Ed.2d 435 (2000), prohibited the district court's use of judicially determined facts to increase the severity of his sentence. Lyons's counsel so argued at the sentencing hearing, asserting that *Apprendi* required a jury, and not the district court, to determine the amount of loss caused by Lyons's crimes for purposes of sentencing. Notwithstanding, the district court enhanced Lyons's sentence based on facts that the government had not presented to the jury.

If the district court had considered only facts proven to the jury, it could have imposed a maximum sentence of six months. *See* U.S. Sentencing Guidelines Manual § 2B1.1(a) (2001). But the district court imposed a ten-level upward adjustment under Guideline § 2B1.1(b)(1)(F) because it concluded that the amount of loss caused by Lyons's crimes was greater than $120,000. The district court also imposed a four-level upward adjustment under Guideline § 2B1.1(b)(2)(B) because it determined that Lyons's crimes affected more than fifty persons. The district court sentenced Lyons to a thirty-six month term of imprisonment to be followed by a three-year term of supervised release.

## II

Lyons raises two issues on appeal. First, he contends that the evidence presented at trial was insufficient to warrant the jury's verdict on count five. Second, Lyons argues that the sentence imposed by the district court violated his right to a trial by jury because the district court enhanced his sentence based on facts that the government did not prove to a jury beyond a reasonable doubt.

### A

We first address Lyons's claim that the government's evidence was insufficient to warrant the jury's verdict. Because Lyons preserved his sufficiency claim by moving for a judgment of acquittal, we review his claim de novo. *See United States v. Carranza,* 289 F.3d 634, 641 (9th Cir.2002).

■ The evidence against Lyons was sufficient to warrant the jury's verdict if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To convict Lyons of mail fraud under 18 U.S.C. § 1341, the government had to prove that Lyons: "(1) participated in a scheme with the intent to defraud, and (2) the scheme used or caused the use of the mails in furtherance of the scheme." *United States v. Montgomery,* 384 F.3d 1050, 1063 (9th Cir.2004) (*quoting United States v. Johnson,* 297 F.3d 845, 870 (9th Cir.2002)).

Lyons contends that the government's evidence was insufficient to warrant the jury's verdict on the fifth count of the indictment because no rational jury could have concluded beyond a reasonable doubt that Lyons acted with intent to defraud. Lyons asserts that there was insufficient evidence presented that the posters Lyons fraudulently signed and sent to Mitchell would be resold as genuine celebrity memorabilia. We disagree.

■ The evidence presented at trial was sufficient to warrant a rational jury's conclusion that Lyons knew Mitchell would resell the fraudulent posters, and that Lyons acted with the requisite intent. Mitchell testified that he presented himself to Lyons as a memorabilia wholesaler who was interested in purchasing fraudulent memorabilia from Lyons. The transcript of a phone conversation between Mitchell and Lyons showed that Lyons agreed to receive a small number of movie posters from Mitchell and to be paid "a couple hundred bucks" for signing them. Earlier

in this conversation, Mitchell told Lyons the posters were "going to … a guy." Mitchell testified that he sent Lyons four unsigned movie posters, each to be signed twice, $200 in cash, and a note that read: "Steve, sorry for the small order. Next time I'll make it worth your time. I only need eight signatures at $25 each." Mitchell testified that he and Lyons decided to use a ball point pen rather than a Sharpie to sign a poster depicting Yul Brynner to make the forged signature appear authentic. Lyons sent the posters back to Mitchell after forging two celebrity signatures on each poster. After Mitchell received the posters he told Lyons that the *Villa Rides* poster bearing the counterfeit Yul Brynner signature had been sold for $700.

While a rational jury viewing this evidence might have accepted Lyons's argument that he mailed the posters to Mitchell unaware that he planned to resell them, the jury certainly was not required to do so. As we have said previously, "[i]t is the jury's duty to weigh the evidence and determine what version of the facts to believe." *United States v. Toomey,* 764 F.2d 678, 681 (9th Cir.1985). Here, the jury was entitled to reject Lyons's assertion that he did not know that Mitchell would resell the posters as authentic celebrity memorabilia. Viewing the evidence in the light most favorable to the government, we hold that there was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Lyons sent Mitchell several posters bearing forged celebrity signatures fully aware that he would sell the posters as though they were genuine.

**B**

We next address Lyons's claim that the sentence imposed by the district court violated his right to a trial by jury, protected by the Sixth Amendment. Because Lyons objected to his sentence on Sixth Amendment grounds before the district court, we review his sentence for harmless error. *United States v. Beng–Salazar,* 452 F.3d 1089, 1094–95 (9th Cir.2006); *United States v. Hagege,* 437 F.3d 943, 959 (9th Cir.2006); *see also Washington v. Recuenco,* ––– U.S. –––, –––, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (holding that a state court's "[f]ailure to submit a sentencing factor to the jury … is not structural error"); *United States v. Kortgaard,* 425 F.3d 602, 610–11 (9th Cir.2005) (remanding an appeal involving a preserved Sixth Amendment error for resentencing in light of *Booker* ).

■ As the Supreme Court has said, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The government bears the burden of proving that the district court's error was "harmless." *See Beng–Salazar,* 452 F.3d at 1096.

Lyons argues that his sentence is invalid under the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), because the district court considered the sentencing guidelines to be mandatory and because the district court relied on judicially determined facts to enhance his sentence. The government concedes that the district court considered the sentencing guidelines to be mandatory, and that the sentence imposed by the district court violated the Sixth Amendment. But the government argues that the district court's error was harmless beyond a reasonable doubt because, in its view, the district court would have imposed the same sentence in light of the "overwhelming and uncontroverted" evidence that Lyons's crimes caused more than $120,000 in loss and affected more than fifty persons.

Under *Booker*, a district court's use of judicially-determined facts to enhance a defendant's sentence does not violate the Sixth Amendment if the district court treats the Sentencing Guidelines as advisory rather than mandatory. *See Booker*, 543 U.S. at 233, 125 S.Ct. 738; *Hagege*, 437 F.3d at 959. In the context of a preserved Sixth Amendment challenge to a sentence enhanced by judicially-determined facts, we must remand for resentencing unless the government demonstrates that the district court would have imposed the same sentence under advisory sentencing guidelines as it did under mandatory guidelines. *See Chapman*, 386 U.S. at 24, 87 S.Ct. 824; *Beng–Salazar*, 452 F.3d at 1096–97.

The record does not show that the district court would have imposed the same sentence under an advisory guidelines system. Even if the government is correct that the evidence supporting the district court's decision to depart upwards is "overwhelming and uncontroverted," the record does not indicate that the district court would have departed upward to the same degree if free to weigh the evidence at its discretion. Likewise, the district court's decision to impose a sentence in the middle of the range permitted under the mandatory guidelines does not prove that the district court would have decided to adjust Lyons's sentence upwards by fourteen levels if the district court had been free not to do so. *See Beng–Salazar*, 452 F.3d at 1096 n. 6 ("That Beng was sentenced to a mid-range Guideline sentence does not affect our analysis.").

We hold that the sentence imposed by the district court violated the Sixth Amendment under the Supreme Court's decision in *Booker*, which prohibited the use of judicially-determined facts to enhance a sentence under a mandatory Guidelines regime, and that the government has not shown that the district

court's error was harmless beyond a reasonable doubt. We vacate Lyons's sentence and remand for resentencing in light of *Booker. See Beng–Salazar*, 452 F.3d at 1096–97; *Hagege*, 437 F.3d at 959; *Kortgaard*, 425 F.3d at 611.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**